OPINION OF THE COURT
Margaret Chan, J.
Plaintiff brings a retaliation claim pursuant to Labor Law § 215 against his former employer, Summit Security Services Inc., and its client and alleged “co-employer,” New York City Health and Hospitals Corporation (HHC). Plaintiff claims that his termination as a security guard was the result of a complaint he filed with the New York City Comptroller’s Office against a previous employer, Paramount Security Services, in which he alleged that he was not paid the prevailing rate of wages. Defendants HHC and Kirk Leon, its Assistant Director of Security, jointly move to dismiss this case for failure to state a cause of action (motion sequence No. 001). Summit Security Services also moves to dismiss (motion sequence No. 002). Plaintiff opposes both motions, and defendants separately reply. The decision and orders on the motions are as follows:
In 2002, plaintiff was hired as a security guard by nonparty Specialist Security Services, and assigned to work at two administrative office buildings occupied by HHC. In December 2005, nonparty Paramount Security Services replaced Specialist as the security services contractor for HHC. Plaintiff maintained his position as a security guard and his hourly wage was consistent with the prevailing wage set forth in the Comptroller’s wage schedule for an unarmed security guard position for the period of July 1, 2005 through June 30, 2007 (complaint ¶ 12). Plaintiff suspected that Paramount did not pay him the prevailing rate of wage from July 1, 2008 through December 2012 or provide him with paid holidays, vacation, *1059 and sick days, and maintained a time card that reflected higher wages than he actually received.
In the fall of 2012, while still employed by Paramount, plaintiff imparted his suspicions to HHC’s Assistant Director of Security, Kirk Leon. Plaintiff alleged that Leon confirmed his suspicions about being underpaid, but instructed him not to do anything about it {id. ¶¶ 20, 22). Plaintiff disregarded his advice and, in December 2012, he and two other colleagues made a prevailing wage complaint to the Comptroller’s Office against Paramount. According to plaintiff, Paramount’s contract with HHC was terminated in March 2013, ostensibly because of the labor complaint to the Comptroller’s Office. In the same month, plaintiff began to work for Summit Security Services in the same HHC locations at the prevailing rate of $20.05 per hour {id. ¶ 30).
In May 2013, Summit disciplined plaintiff for improperly taking an office key home with him. Plaintiff claims that defendant Leon instructed plaintiff’s supervisor, Nicholas Guaniello, to fire him for this infraction, but Guaniello refused because plaintiff had not received a warning. Shortly thereafter, plaintiff was issued a written warning for the incident. In June 2013, Leon chastised plaintiff for leaving his security post and entering a fifth-floor conference room where an HHC meeting was taking place {id. ¶¶ 34-35). On August 22, 2013, Leon suspended plaintiff for one day and issued him a warning for eating inside the Command Center, an offense that plaintiff did not know was prohibited. At the end of August, Leon accused plaintiff of failing to report that a security guard under plaintiff’s supervision had improperly taken home an HHC security radio. Plaintiff claims he was unaware that it was his responsibility to account for other guards’ radios. On September 11, 2013, plaintiff was barred from his workplace and told to report to Summit’s offices where he was instructed not to return to work. On September 16, 2013, Summit terminated him.
Plaintiff’s single cause of action against defendants is for retaliation in violation of Labor Law § 215. The HHC defendants, in motion sequence No. 001, and Summit, in motion sequence No. 002, argue no right of action exists against them and they both seek dismissal. Plaintiff counters that his claim is viable due to a recent amendment to Labor Law § 215, known as the Wage Theft Prevention Act (WTPA), which substantially broadened protections for workers who were subject to viola *1060 tions of the Labor Law (see Labor Law § 215 [1] [a], amended by L 2010, ch 564, § 10).
In determining a motion to dismiss the court’s role is ordinarily limited to determining whether the complaint states a cause of action (see Frank v DaimlerChrysler Corp., 292 AD2d 118 [1st Dept 2002]). Upon such a motion the court must accept the facts alleged as true and determine simply whether plaintiffs facts fit within any cognizable legal theory (see CPLR 3026; Morone v Morone, 50 NY2d 481 [1980]). The complaint shall be liberally construed and the allegations are given the benefit of every possible favorable inference (see Leon v Martinez, 84 NY2d 83, 87 [1994]).
Summit’s motion to dismiss (motion sequence No. 002) argues that Labor Law § 215 only applies to employers who employed plaintiff at the time of the protected activity and since it was not plaintiff’s employer at that time, it must be dismissed from suit. HHC makes the same argument and adds that it is exempt from Labor Law § 215 because of its status as a political subdivision of the State of New York.
The WTPA, which became effective on April 9, 2011, states in pertinent part:
“No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner.” (Labor Law § 215 [1] [a] [emphasis added].)
Plaintiff asserts that the added language “any other person” broadens the universe of parties that could be found liable for retaliation, including the defendants here.
As to Summit, plaintiff contends that the legislature contemplated the instant scenario where an employee is penalized by a future employer for making a wage complaint regarding a prior employer, which is why the legislature expanded the WTPA to include the phrase “any other person.” Summit argues that the amendment was meant to hold liable parties *1061 that lacked a clear employer-employee relationship. Summit, however, squarely fits within the traditional meaning of an employer, and thus, it should be excluded because it did not employ plaintiff at the time of the protected activity. Summit argues the statute provides a claim against plaintiff’s employer during the time of his prevailing wage complaint. This court agrees.
Labor Law § 215 applies to employers who employed plaintiff at the time of the protected activity. While the phrase — “any other person” — arguably does not foreclose a future employer from liability, this would be a significant deviation from the traditional interpretation of Labor Law § 215. Without a clear articulation of the creation of such a claim against future employers who did not employ plaintiff at the time of his or her reporting a Labor Law violation, this court will not tease one out.
Prior to the WTPA amendment, case law instructed that in order to state a claim under Labor Law § 215 “a plaintiff must adequately plead that while employed by the defendant, he or she made a complaint about the employer’s violation of New York Labor Law and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result” (Higueros v New York State Catholic Health Plan, Inc., 526 F Supp 2d 342, 347 [ED NY 2007] [emphasis added]). One month prior to the enactment of the WTPA, the Appellate Division in Adler v 20/20 Cos. (82 AD3d 914 [2d Dept 2011]) examined the legislative history of Labor Law § 215. In Adler, plaintiff, a job applicant, was denied a position and the Court foreclosed a suit against the prospective employer pursuant to Labor Law § 215. The Court in Adler stated that “the text of Labor Law § 215 does not reveal a clear intent to authorize a claim against a prospective employer for a retaliatory failure to hire” (82 AD3d at 915). The then-existing legislative history supported a “clear intention ... to provide a cause of action against current and former employers for discriminatory or retaliatory acts” (id.).
After the WTPA amendment, courts have continued to interpret “current and former employers” under Labor Law § 215 (1) (a), as those that employed plaintiff at the time of the labor complaint (see e.g. Williams v AAA S. New England, 2015 WL 864891, *5, 2015 US Dist LEXIS 27435, *12 [SD NY, Mar. 2, 2015, No. 13-CV-855 (VB)], citing Higueros v New York State Catholic Health Plan, Inc., 526 F Supp 2d 342 [SD NY 2007] *1062 [to state a claim under the WTPA plaintiff must plead that while employed by the defendant she was retaliated against for reporting wage theft]; Soto v MDB Dev. Corp., 2013 NY Slip Op 32019[U] [Sup Ct, NY County 2013], citing Ting Yao Lin v Hayashi Ya II, Inc., 2009 WL 289653, *7, 2009 US Dist LEXIS 12963, *20 [SD NY, Jan. 30, 2009, No. 08-Civ-6071 (SAS) (AJP)] [plaintiff must show that while employed by the defendant, he made a complaint and then was terminated or otherwise penalized]; Antolino v Distribution Mgt. Consolidators Worldwide, LLC, 2013 NY Slip Op 31815 [U] [Sup Ct, NY County 2013], citing Higueros v New York State Catholic Health Plan, Inc. [plaintiff must plead that while employed by the defendant, plaintiff made a complaint and suffered an adverse employment action]).
Plaintiff suggests that these post-WTPA cases should not be considered because they rely on case law made prior to the WTPA. This argument is misplaced. Precisely because these modern cases continue to interpret Labor Law § 215 as providing a remedy against an employer who employed plaintiff at the time he or she engaged in the protected activity indicates a long established rule of law that the legislature did not explicitly seek to change by the adoption of the WTPA. Without a clear manifestation that the legislature sought to expand potential defendants to include employers who did not employ plaintiff at the time of his or her reporting a labor law violation, the court cannot construe such a meaning (see McKinney’s Cons Laws of NY, Book 1, Statutes § 153). Therefore, as Summit did not employ plaintiff at the time he made his prevailing wage complaint, plaintiff cannot articulate a claim against Summit pursuant to Labor Law § 215. Accordingly, Summit’s motion to dismiss is granted.
The HHC defendants likewise argue that since they were not plaintiff’s employer, no claim may lie against them pursuant to Labor Law § 215. It is not disputed that plaintiff was employed by private security companies that furnished services to HHC. However, it is not settled that plaintiff was employed only by independent contractors — Specialist, Paramount, and Summit — as HHC asserts, but fails to offer any support on this point (cf. Adler v 20/20 Cos., 82 AD3d 915, 917 [2d Dept 2011]). Plaintiff, on the other hand, sufficiently pleaded that HHC’s Assistant Director of Security had control over his work when he made a protected labor complaint. Notably, there is an appearance that HHC’s Assistant Director of Security, Kirk Leon, *1063 had some involvement with the independent contractors’ security guards. To wit, he was the one to advise plaintiff regarding his suspicions about Paramount.
In any event, whether HHC can be deemed an employer is not the crucial question as this action tests the WTPA’s expansion to include the broadly phrased “any other person” (Labor Law § 215 [1] [a]). Again, this court must examine the plain language of the statute. In matters of statutory construction, the primary task is to determine that which the legislature intended (see People v Jones, 26 NY3d 730, 733 [2016]). “Of course, the words of the statute are the best evidence of the Legislature’s intent” (Riley v County of Broome, 95 NY2d 455, 463 [2000]). If the language is clear and unambiguous, the courts must follow the plain meaning of the statute (see Statutes § 76; Matter of Best Way Beer & Soda Distribs. v New York State Liq. Auth., 99 AD2d 727 [1st Dept 1984]). If, however, the language is ambiguous, the courts will examine the underlying legislative intent and purpose of the statute (see Riley at 95 NY2d 463-464).
The WTPA instructs that “[n]o employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person” will retaliate against an employee who made a complaint “that the employer has engaged in [a violation of the labor law]” (Labor Law § 215 [1] [a]). On its face, the statute is concerned with the actions of employers and those acting on the behalf of the employer (i.e., agents and officers) for the improper conduct by the same employer. As articulated by the bill jacket, the legislature stated that the purpose of the WTPA is “to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein.” (Senate Introducer Mem in Support, Bill Jacket, L 2010, ch 564 at 5.) Under the “summary of specific provisions” the bill jacket elaborates that in order to “[c]lose[ ] loopholes on what actions constitute prohibited retaliation . . . [the amendment] [prohibits retaliation by persons who do not meet technical definition of ‘employer’ under the statute but who an employee can prove retaliated against him or her because he or she engaged in protected conduct under the Labor Law” (id. at 7). HHC, if not technically plaintiff’s employer, fits in the “any other person” under the WTPA.
HHC also contends that it is a political subdivision of the State of New York, and therefore is exempt from Labor Law *1064 § 215. HHC points to the definitions provided in another section of the Labor Law, the Minimum Wage Act, which specifically exempts “federal, state or municipal government or political subdivision thereof” from causes of action against them (Labor Law § 651 [5] [n]). Plaintiff responds that those definitions do not apply for claims brought under Labor Law § 215. The exemptions under Labor Law § 215 (c) (1) pertain only to “state or any municipal subdivisions or departments thereof”;* it makes no mention of political subdivisions.
It is a maxim of statutory construction that where a specific exemption is made, the legislature’s failure to exempt other entities of a similar nature from operation of the statute is some indication that no further exemption was intended (see Statutes § 240; Kroll v Clauson, 74 NYS2d 21 [Sup Ct, NY County 1947], affd 272 App Div 1005 [1st Dept 1947], affd 297 NY 698 [1947]). Particularly where other provisions of the Labor Law provide for an exemption for political subdivisions, the absence of the exemption in Labor Law § 215 (1) (c) indicates it was intentionally made.
Whether HHC is a political subdivision has been debated by federal courts with differing results (see e.g. Ali v New York City Health & Hosps. Corp., US Dist Ct, SD NY, 11 Civ 6393, Crotty, J., 2013 [HHC is a political subdivision for the purposes of Labor Law overtime claims, making it exempt from suit]; Massiah v MetroPlus Health Plan, Inc., 856 F Supp 2d 494 [ED NY 2012] [HHC is not a political subdivision for purposes of Labor Law § 650 et seq.]; Drayton v MetroPlus Health Plan, Inc., 791 F Supp 2d 343, 347 [SD NY 2011] [“while there is no squarely controlling New York judicial decision, the Court concludes that New York courts are overwhelmingly likely to hold that HHC is a political subdivision for purposes of New York Labor Law”]). However, such an analysis is of no moment here because Labor Law § 215 omits political subdivisions in its written exemptions (see Labor Law § 215 [1] [c]). As such, HHC — whether it is a political subdivision or not — is not an exempt entity from Labor Law § 215 because the exemption applies to “state or any municipal subdivisions or departments *1065 thereof” (id.). As such, HHC does not benefit from the exemption under Labor Law § 215.
Accordingly, it is hereby ordered, defendants New York City Health and Hospitals Corporation and Kirk Leon’s motion to dismiss (motion sequence No. 001) is denied, and it is further ordered, Summit Security Services Inc.’s motion to dismiss (motion sequence No. 002) is granted.

 Employees of state and municipal subdivisions or departments have other remedies against their employers (see e.g. Civil Service Law § 75-b; Labor Law § 27-a [protections for public employees who report violations of occupational safety and health standards]). Employees of public authorities similarly have protections drafted for their benefit (see Public Authorities Law § 2857).